ON MOTION FOR REHEARING
HAZOURI, J.
Appellee Leon Barbanell’s motion for rehearing is granted, and we withdraw our prior opinion and substitute the following opinion:
Appellant, Philip Morris USA, Inc. (PM) appeals a final judgment in favor of appel-lee, Leon Barbanell, as personal representative of the estate of Shirley Barbanell, deceased, who cross-appeals the trial court’s granting of a directed verdict as to the claims for fraudulent concealment and punitive damages. As to the direct appeal, PM brings two issues for our consideration. First, the issue presented is whether the trial court misapplied Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006). This court has already ruled on this issue and the effects of the Engle Phase I findings in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011). Thus, this issue is without merit under the dictates of Brown. We also affirm the trial court’s rulings on Barbanell’s cross-appeal.
It is the second issue raised by PM that we revisit. PM argues that the trial court erred in denying its motion for judgment as a matter of law, claiming that Barba-nell’s claims were barred as a result of the statute of limitations. In our prior opinion we determined that the trial court had erred in denying PM’s motion for judgment as a matter of law because the jury returned a special interrogatory verdict finding that the statute of limitations had run. Since the release of our opinion, the First District Court of Appeal has decided R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331 (Fla. 1st DCA 2012), which reaches a conclusion opposite from our original opinion. We find the reasoning in Webb to be persuasive and we therefore affirm the trial court’s denial of PM’s motion for judgment based on the determination of the statute of limitations.
In December 2007, Barbanell filed a wrongful death action against PM, claiming strict liability, fraud by concealment, conspiracy to commit fraud by concealment, negligence, breach of express warranty, and breach of implied warranty. The case went to a jury trial in two phases. In the first phase, the jury was to determine if the decedent was “addicted to cigarettes that contained nicotine, and was *154 that addiction a cause of either her death or injuries that she suffered during her lifetime.” The jury, in the first phase, would also determine when the decedent “was first put on notice that she in fact was being injured as a result of her addiction to smoking cigarettes.” In the second phase, the jury would decide comparative fault of the parties and damages.
During the first phase of the trial, the decedent’s husband, Leon Barbanell, testified that the decedent started smoking in 1939 when she was sixteen years old. From the time she met Mr. Barbanell at age thirty and throughout their marriage, she smoked two packs of cigarettes a day. From 1965 to 1970, Mr. Barbanell urged his wife to cut back on smoking because he realized that smoking “might not be good for her” when she started to be “a little short of breath.” By 1982, the decedent started talking about quitting smoking cigarettes due to the fact that she had trouble walking up steps and difficulty with her breathing. By 1985 or 1986, trouble climbing stairs prompted the decedent to go to a doctor and have medical testing. The testing came back as normal.
The jury also heard testimony from Karen Siegel, the decedent’s daughter, who outlined the different physical problems from which her mother suffered. Beginning in 1968, her mother experienced shortness of breath and “would tire easily.” She did not have stamina to walk up a flight of stairs or do “simple kinds of things that people do on a daily basis.” From the time Siegel was in high school, her mother “was very, very aware that her smoking was causing serious problems to her health.” Her mother told her “over the years many, many times that she knew that smoking was causing her ... to have such bad health.” Siegel stated that her mother went to the doctor and, after being shown an X-ray of her lungs, was told that she absolutely had to stop smoking.
Barbanell testified that, by the 1990s, his wife was experiencing “hard breathing,” prompting her to go to a cardiologist. In 1991, an X-ray was taken of the decedent’s lungs. According to Barbanell, November 1991 was the first time the decedent had lung problems. At this time, the decedent was evaluated for something found in her lung. Barbanell testified that his wife realized for the first time in 1991 or 1992 that she was sick from smoking cigarettes. Previously, the decedent never thought she would get sick from smoking.
In 1994, a CT scan and X-ray were performed on the decedent’s lungs. Dr. Allen Feingold testified that the 1994 X-ray report described something typically caused by emphysema, named pulmonary hypertension. Dr. Feingold testified to seeing signs of emphysema. In 1996, the decedent underwent several CT scans revealing a large mass in her lung. That mass- turned out to be lung cancer. Dr. Feingold testified that the 1996 CT scan report focused on the large cancer in her lung and did not mention emphysema. Nevertheless, by reviewing the X-rays and the CT scans, Dr. Feingold concluded that the decedent had a chronic obstructive pulmonary disease (“COPD”), specifically emphysema.
By early 1996, the decedent cut back her smoking to one pack a day. By April 1996, the decedent finally quit smoking. That very month, the decedent died of lung cancer at the age of seventy-three.
After the presentation of evidence in phase I, and before the case went to the jury, PM moved for a directed verdict on the basis that the statute of limitations barred all claims in this case. The trial court denied the motion without prejudice to renew it after receiving the verdict. The trial court later granted a motion for *155 directed verdict in favor of Barbanell as to lung cancer, stating that the mass was not seen until 1994 at the earliest.[1]
At the conclusion of the evidence in Phase I, the court held a hearing to determine jury instructions and the verdict form. PM requested that the jury verdict include question 8:
Did Shirley Barbanell know, or should she have known in the exercise of reasonable care, prior to May 5, 1990, that she had been injured, and that there was a reasonable possibility that her injury was caused by cigarette smoking?
This question was intended to address PM’s defense of the statute of limitations. Barbanell’s counsel objected to question 8.
The following colloquy reflects counsel’s objection:
PLAINTIFF’S COUNSEL: Basically, Judge, what that allows, then, is if a person is smoking and they cough, then that’s, basically, saying, well, then now you’re put on notice because you just coughed, and you know—
THE COURT: No, no.
PLAINTIFF’S COUNSEL: So it allows—
THE COURT: No, sir.
PLAINTIFF’S COUNSEL: — Tobacco to argue any kind of injury whatsoever that this woman thought she was injured in any way, even by virtue of her cough, well, then, she’s precluded from bringing the case — the case.
THE COURT: I don’t—
PLAINTIFF’S COUNSEL: That’s the problem here, Judge.
THE COURT: I don’t agree with that; but that isn’t the evidence in this case.
And you know darn well that one of the major hurdles you have to overcome is when the defense has to offer her own daughter’s testimony by deposition, that’s a serious hurdle for you to overcome, because the jury has got to conclude that she knew — that she knew a long time ago that smoking was hurting *156 her health, that it was causing her to have breathing problems.
Now, what I will — I’m not going to— I’ve denied a summary — a directed verdict on that issue, but the only — the only exception, in my view, is injury—
A symptom is not an injury. Saying I have a cough is not necessarily an injury.
And I’ve ruled, and we’re done.
[[Image here]]
THE COURT: Okay. So, the verdict form, we’ll take a look at what you’ve each offered.
Well, before we go to the verdict form, anything further on the instructions, Plaintiff?
PLAINTIFF’S COUNSEL: Your Honor, can I, just for preservation of the record, make a comment regarding the statute of limitations instruction? I understand the Court’s ruling.
THE COURT: What is it?
PLAINTIFF’S COUNSEL: I just wanted to note for the record that we have two separate and distinct illnesses that we’re alleging in this case, and that needs to be presented separately to the jury under the statute of limitation.
Lung cancer and chronic obstructive pulmonary disease are separate and apart. Because she may have had symptoms of one condition going back, may have had — and that’s going to be their test of the evidence — that’s separate and apart from lung cancer, and that is the fundamental basis for our instruction.
[[Image here]]
THE COURT: This is my decision. It’s not like I’m not sure and I’m giving you an opportunity to persuade me. I am sure about this.
The dissent, in concluding that counsel for Barbanell agreed to question 3, totally ignores counsel’s strenuous and repeated objection to submitting question 3 to the jury. It is clear that the trial court was determined to make question 3 a part of the jury verdict over counsel’s objection. The statement “That is fine with us, your Honor” referred to by the dissent — when viewed in context with what had preceded it — is a mere recognition of the trial court’s decision and the wording of question 3.
At the end of phase I of the trial, the jury was presented with several questions, which it answered as follows:

Wrongful Death

[[Image here]]
*157 [[Image here]]
After receiving the phase I verdict, and before the phase II proceedings began, PM restated its belief that the answer to question 3 on the verdict form was tantamount to a defense verdict. The trial court confirmed that it had overruled the objection.
Following the presentation of evidence in phase II, PM renewed its motion for directed verdict, stating that the cause of action was barred by the statute of limitations. PM specifically pointed to question 3 where the jury determined that the decedent knew, or should have known, prior to May 5, 1990, that she had been “injured” and that there was a “reasonable possibility” that her injury was caused by cigarette smoking. The trial court again denied PM’s motion for directed verdict.
At the end of phase II, the jury found that Barbanell sustained $5,339,198 in damages, with PM 36.5% at fault and the decedent 63.5% at fault. PM, once again in its post-trial motions, moved for a judgment on the ground that Barbanell’s claims were barred by the statute of limitations. Barbanell also moved to set aside the jury’s answer to question 3 in phase I, where the jury found that the decedent knew or should have known that she was injured by smoking prior to May 5, 1990. Barbanell argued that the jury finding in question 3 was in conflict with the trial court’s prior ruling directing a verdict on the statute of limitations regarding lung cancer. The trial court denied both PM’s and Barbanell’s motions.
“A legal issue surrounding a statute of limitations question is an issue of law subject to de novo review.” Fox v. Madsen, 12 So.3d 1261, 1262 (Fla. 4th DCA 2009) (citation omitted). A trial court’s ruling on a motion for judgment in accordance with a prior motion for directed verdict is also reviewed de novo. See Hancock v. Schorr, 941 So.2d 409, 412 (Fla. 4th DCA 2006).
As noted above, the jury found that Mrs. Barbanell had become addicted to cigarettes containing nicotine which was the legal cause of her death as a result of lung cancer. Emphysema or COPD was ruled out as causing Mrs. Barbanell’s death. Since the trial court had earlier granted the directed verdict on PM’s claim of statute of limitations as it applied to Mrs. Barbanell’s death as a result of cancer, the jury’s answer to question 1 made question 3 unnecessary and irrelevant. The record is unclear as to why the trial court felt the necessity to pose question 3. Question 3 does not define “the injury” that might be *158 subject to the statute of limitations. Clearly it could not be lung cancer because the trial court granted the directed verdict as to lung cancer. There was no evidence to suggest that Mrs. Barbanell was aware that she had lung cancer prior to May 5, 1990. Additionally, since the jury had answered question 1 in the negative concerning COPD, it is unclear as to why it was necessary for the jury to answer question 4.
What is revealed by the answer to question 4 is that Shirley Barbanell did not know nor should have known by the exercise of reasonable care prior to May 5, 1990, that she suffered from emphysema, a form of COPD. Whatever “injury” referred to in question 3 certainly was not lung cancer or COPD.
The verdict form directed that if the jury answered l.a. “yes,” it was not to consider the survival claim. The survival claim would need to be addressed only if the jury decided that Mrs. Barbanell did not die from lung cancer or COPD. Perhaps the trial court felt that should the jury need to address question 2, then the answer to question 3 would be relevant to the statute of limitations defense. However, as noted above the jury never addressed question 2.
PM argues the action was time barred under the statute of limitations by virtue of the “first-injury rule.” We reject that argument as did the First District in R.J. Reynolds Tobacco v. Webb. We find the First District’s decision to be persuasive and quote at length from its opinion:
RJR argued the action was time-barred under the statute of limitations by virtue of the “first-injury rule,” invoking “the long-standing rule generally applicable to personal injury claims [that] ‘the cause of action accrues and the statute [of limitations] begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained ha[s] been ascertained.’” Larson & Larson, P.A. v. TSE Indus., Inc., 22 So.3d 36, 42 (Fla.2009) (quoting Seaboard Air Line R.R. Co. v. Ford, 92 So.2d 160, 164 (Fla.1955)). RJR maintained that Mr. Horner knew or should have known, prior to May 5, 1990 (more than four years before the class action in Engle was filed on May 5, 1994), that he had chronic obstructive pulmonary disease (COPD), and that any claim based on any injury from smoking — including lung cancer — accrued as soon as he became aware — or should have become aware — of COPD. The trial court ruled that knowledge of COPD did not, as a matter of law, put him on notice of the cancer to which he eventually succumbed.
We find no error in this ruling. It comports with the Third District’s rationale in Eagle—Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), where a plaintiff who suffered from asbestosis, but not cancer, sought to recover damages not only for asbestosis but also for the enhanced risk of cancer as the result of exposure to asbestos. After a scholarly discussion of the rule against splitting causes of action, the Eagle—Picher court concluded that “to permit an action for cancer only if and when it occurs most assuredly promotes judicial economy by discouraging the filing of anticipatory lawsuits and the concomitant protraction of pending lawsuits so as to allow the still inchoate cancer claim to ripen.” Id. at 521.
The court observed that asbestosis and cancer are medically distinct diseases even though they may emanate from the same exposure to asbestos. Id. at 522. Noting thousands of pending asbestos claims and the long latency pe *159 riod for asbestos-related cancer, the court concluded:
Given the immensity of the demands made and yet to be made upon asbestos litigation defendants, the finite resources available to pay claimants in mass tort litigation, and the real danger that over-compensation of early claimants who may not contract cancer will deplete these finite resources to the detriment of future claimants who do, public policy requires that the resources available for those persons who do contract cancer not be awarded to those whose exposure to asbestos has merely increased their risk of contracting cancer in the future. Eliminating the future risk of cancer as a compensable damage, and permitting an action for later discovered cancer to be independent of any claim for damages, prosecuted or not, on account of asbestosis, will, it is to be hoped, prevent a drain on the assets which could be used to compensate actual cancer victims.
Id. at 525-26. Our supreme court stated with regard to tobacco in Carter, 778 So.2d at 936-37:
Lung cancer caused by smoking is a latent or “creeping disease.” See Copeland v. Armstrong Cork Co., 447 So.2d [922, 926 (Fla. 3d DCA 1984) ] (stating that a latent or “creeping” disease is a disease acquired over a period of years as a result of long-term exposure to injurious substances); see also Brown Williamson Tobacco Corp. v. Young, 690 So.2d 1377, 1379 (Fla. 1st DCA 1997) (a latent disease is “difficult to pinpoint when and where it began”).
“ ‘[M]anifestation’ of a latent injury in a products liability claim occurs when the plaintiff is on notice of a causal connection between exposure to the allegedly defective product and the resultant injury.” Barnes v. Clark Sand Co. Inc., 721 So.2d 329, 332 (Fla. 1st DCA 1998).
Smoking cigarettes may cause more than one kind of injury. See Pooshs v. Philip Morris USA, Inc., 51 Cal.4th 788, 123 Cal.Rptr.3d 578, 250 P.3d 181, 190-91 (Cal.2011) (concluding that “when a later-discovered latent disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease” and therefore “no good reason appears to require plaintiff, who years ago suffered a smoking-related disease that is not lung cancer, to sue at that time for lung cancer damages based on the speculative possibility that lung cancer might later arise”).
Applying Rhode Island law in Nicolo v. Philip Morris, Inc., 201 F.3d 29, 35 (1st Cir.2000), the court noted that requiring a strict application of the rule against splitting causes of action “would place, as other courts have observed, a victim in an impossible position.”
If he did not sue at the earliest onset of breathing difficulty or emphysema, he would risk being barred from pursuing a remedy for a cancer condition discovered much later. If, on the other hand, he brought suit at such an early stage he would not be able to come forward with the proof of sufficient likelihood of damage from cancer to sustain his cause of action. ... As then-Judge Ginsburg wrote in Wilson v. Johns-Manville Sales Corp., 684 F.2d 111 (D.C.Cir.1982): “In latent disease cases, this community interest [in balancing the interests of the parties and producing a fair resolution] would be significantly undermined by a judge-made rule *160 that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion some time in the future.” Id. at 119.
[[Image here]]
We, therefore, are confident that a Rhode Island court would not deem cancer to be so foreseeably related to the very beginning of plaintiffs respiratory difficulties as to identify that as the time of accrual of her cause of action for cancer.
Id. The First Circuit recited “a number of characteristics of cancer that militate against requiring a possible victim, even though an addicted smoker, to make an early decision to commence litigation. The causes of cancer are various, by no means confined to prolonged smoking. Nor is cancer an inevitable result of such smoking. Often its incidence defies foreseeability. It is quite different from afflictions of shortness of breath, emphysema, or other respiratory difficulties. It is of a different magnitude .... Unlike impairments to breathing, cancer does not lend itself to lay identification.” Id. at 335.
93 So.3d at 333-35.
We find the facts of the instant case to be even more compelling than Webb. In Webb, the decedent Mr. Horner was determined to know or have reason to believe that he had COPD prior to May 5, 1990. As the First District noted, a person with COPD may not develop lung cancer, and it was undisputed that Horner was not diagnosed with lung cancer until 1991. In this case, the trial court directed a verdict on PM’s affirmative defense that the statute of limitations barred Barbanell’s claim of wrongful death from lung cancer, and the jury made the finding that Shirley Barba-nell did not know or have reason to know that she had COPD prior to May 5, 1990. Therefore, the unspecified injury that the jury determined that Mrs. Barbanell was aware of prior to May 5, 1990, was not COPD nor was it the lung cancer. We therefore affirm the trial court in all respects as to the direct appeal and cross-appeal.

Affirmed.

TAYLOR, J., concurs.
LEVINE, J., dissents with opinion.

. Specifically, the trial court stated:
Well, you see, this is the problem when you have testimony from someone who grew up with her who says, I know it’s making me sick, and she's getting increasingly tired, which was part of the testimony, and also, again, because the issue is what is a jury issue, the jury issue—
I also recall hearing testimony that this is someone who did not like to go to the doctor, that she finally got to a point where she was seriously ill, that it was truly causing her difficulty in her ability to function that she finally went to a doctor in late 1990, early 1991. So I can't ignore that testimony.
[[Image here]]
And — but as to the lung cancer, I mean, I had initially denied a motion for directed verdict on a limitations question. This has been briefed by both sides post then; and so, technically, the issue is open until we begin closing arguments.
And I’m beginning to see the merit of the argument that should the jury find that, in fact, Mrs. Barbanell did suffer from lung cancer, and that that either caused her an injury or caused her death, there is no question under the evidence presented that — that there was no mass ever seen until 1994, at the earliest. At the earliest.
And even then the evidence is scant, but there is some evidence, so I would not — if that were a critical date, I would not be inclined to direct a verdict on that issue.
But since we know there was a prior chest study in 1991 which found no evidence of a mass, we know that the earliest date from which anyone could say there was some evidence of a growth of any nature in the chest was 1994, which is within the limitations period.
[[Image here]]
I’m granting the motion for directed verdict on that issue because there is no evidence, none, that any study was done outside the limitations period that would show a mass.

. There is a four-year statute of limitations for tort claims. See § 95.11(3), Fla. Stat. May 5, 1990, signifies the date four years prior to the filing of the Engle class action.