DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC.** and **R.J. REYNOLDS TOBACCO COMPANY,**
Appellants,

v.

**STANLEY MARTIN,** as Personal Representative of the **ESTATE OF CAROLE MARTIN,**
Appellee.

No. 4D17-574

[ December 12, 2018 ]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Joseph Murphy, Judge; L.T. Case No. 2007CV03644 (19).

William L. Durham II and Val Leppart of King & Spalding LLP, Atlanta, GA, for appellant R.J. Reynolds Tobacco Co.

Scott A. Shesin and Michael Rayfield of Mayer Brown LLP, New York, NY, and Joseph H. Lang, Jr. of Carlton Fields Jorden Burt, P.A., Tampa, for appellant Philip Morris USA Inc.

Richard B. Rosenthal of Richard B. Rosenthal, P.A., Miami, and Eric S. Rosen of Kelley Uustal, PLC, Fort Lauderdale, for appellee.

ARTAU, EDWARD L., Associate Judge.

In this *Engle*[1] wrongful death case, the defendants, Philip Morris and R.J. Reynolds, appeal a final judgment awarding the plaintiff just under $3.7 million in compensatory damages (the $5.4 million assessed by the jury, less a 32% comparative fault reduction), and $650,000 in punitive damages. The plaintiff cross-appeals the trial court's reduction of the compensatory damages award based on the decedent's comparative fault.

On the main appeal, we hold that, because the specific tobacco-related

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1254 (Fla. 2006).

disease that caused the *Engle* class member's death and gave rise to this claim manifested after October 1, 1999, the trial court erred by declining to apply the post-1999 version of section 768.73, Florida Statutes, which bars successive awards of punitive damages under the circumstances here. We therefore reverse the trial court's ruling on that issue, but affirm on all other issues raised in the main appeal.

On the cross-appeal, we reverse and remand for reinstatement of the entire amount of compensatory damages found by the jury.

### *Factual Background*

The plaintiff and his late wife, Carole Martin, moved to Florida in 1992, but split their time between New York and Florida.

Mrs. Martin suffered a smoking-related heart attack in 1995. She later developed lung cancer in 2003, and ultimately died of the cancer in 2004.

In 2007, the plaintiff brought this *Engle* wrongful death lawsuit against the defendants, asserting claims of strict liability, negligence, fraud by concealment, and conspiracy to commit fraud by concealment. The trial court granted the plaintiff leave to amend his complaint to add claims for punitive damages.

Before trial, the defendants sought to invoke the current version of section 768.73(2)(a), Florida Statutes, which generally bars successive punitive damages awards against a defendant "in any action alleging harm from the same act or single course of conduct." The defendants argued that section 768.73(2)(a) barred a punitive damages award because: (1) the plaintiff's claim arose after the October 1, 1999 effective date of the statute; and (2) each defendant had already paid over $150 million in punitive damages in tobacco lawsuits based on the same conduct. The trial court deferred ruling on this issue until after trial.

At the conclusion of the trial, the jury found that Mrs. Martin was "a legal citizen and resident of Florida on or before November 21, 1996," found in favor of the plaintiff on each claim, determined that Mrs. Martin was 32% at fault, found that the plaintiff had suffered approximately $5.4 million in compensatory damages, assessed $450,000 in punitive damages against Philip Morris, and assessed $200,000 in punitive damages against R.J. Reynolds.

In post-trial motions, the defendants argued that the plaintiff's claim for punitive damages was barred by the current version of section

768.73(2)(a).  The trial court denied the defendants' post-trial motions.

The trial court entered final judgment in favor of the plaintiff, but reduced the compensatory damages award to just under $3.7 million to account for the jury's comparative fault determination.  This appeal and cross-appeal ensued.

### *Main Appeal*

We first address the defendants' argument that the trial court erred by refusing to apply the post-1999 version of section 768.73.  The defendants contend that the post-1999 version of the statute applies because the plaintiff's cause of action arose after 1999.  Specifically, the defendants contend that the plaintiff's wrongful death cause of action arose when Mrs. Martin died in 2004.  Alternatively, the defendants contend that even if the plaintiff's cause of action arose when Mrs. Martin developed lung cancer in 2003, the post-1999 statute would still apply.

The plaintiff argues in response that the post-1999 statute does not apply here, because (1) the wrongful death action relates back to the 1994 *Engle* class action complaint, and (2) the date of the applicable statutory law necessarily had to be before the November 1996 *Engle* class membership cut-off date.  Additionally, the plaintiff argues that the post-1999 statute's limitation on successive punitive damages awards is unconstitutional.

A trial court's ruling on an issue of statutory interpretation is subject to *de novo* review.  *Headley v. City of Miami*, 215 So. 3d 1, 5 (Fla. 2017).

Section 768.73(2)(a), Florida Statutes, as amended in 1999, provides that "punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant . . . in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages."  § 768.73(2)(a), Fla. Stat. (1999).

The amended version of section 768.73 applies "to all causes of action arising after the effective date of [the] act," which was October 1, 1999.  § 768.73(5), Fla. Stat. (1999); Ch. 99-225, § 23, Laws of Fla.  Before the 1999 amendment, section 768.73 had no such bar on successive awards of punitive damages.

The question for this court, therefore, is whether the plaintiff's cause of action arose after October 1, 1999.

3

In civil cases, the applicable version of a statute is ordinarily the one "in effect when the cause of action arose." *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 n.9 (Fla. 2003).

This court has previously concluded that "Florida law does not distinguish between when a cause of action accrues and when a cause of action arises." *See Lumbermens Mut. Cas. Co. v. August*, 509 So. 2d 352, 353 (Fla. 4th DCA 1987), *quashed*, 530 So. 2d 293 (Fla. 1988).[2] Moreover, Black's Law Dictionary defines the term "accrue" as meaning "[t]o come into existence as an enforceable claim or right; to arise." *Accrue*, BLACK'S LAW DICTIONARY (10th ed. 2014). We quote these sources to emphasize that the terms "accrue" and "arise" are synonymous with respect to when a cause of action comes into existence, and we will be using those terms interchangeably in this opinion.

As a general proposition, "[a] cause of action for wrongful death accrues on the date of [the] decedent's death." *Nationwide Mut. Fire Ins. Co. v. MacDonald*, 645 So. 2d 1057, 1058 (Fla. 4th DCA 1994). However, in *Engle* wrongful death cases, this court has looked to the time when the injury causing the smoker's death manifested in determining which version of section 768.73 applied. *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487, 492 (Fla. 4th DCA 2015) ("Plaintiff's cause of action accrued in 1994, when Mr. Schoeff was diagnosed with lung cancer. As such, the 1994 version of the statute governs.") (citation omitted), *quashed on other grounds*, 232 So. 3d 294 (Fla. 2017); *R.J. Reynolds Tobacco Co. v. Buonomo*, 138 So. 3d 1049, 1052 (Fla. 4th DCA 2013) (holding that the 1995 version of section 768.73 applied in an *Engle* wrongful death case where the smoker began suffering from COPD in 1995, which caused his death in 2008: "It is . . . the 1995 version of the statute that governs the instant case—a fact the parties do not dispute."), *quashed on other grounds*, Nos. SC14-81 & SC14-83, 41 Fla. L. Weekly S113, 2016 WL 374082 (Fla. Jan. 26, 2016).

---

[2] While it is true that the Florida Supreme Court quashed this court's *Lumbermens* decision, the Florida Supreme Court's opinion did not appear to turn on any distinction between the terms "accrue" and "arise." *See Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293 (Fla. 1988). Instead, the Florida Supreme Court applied the rule of *lex loci contractus*, and held that a cause of action for uninsured motorist benefits arose in Massachusetts, where the insurance policy was executed, rather than in Florida, where the automobile accident occurred. *Id.* at 294–96. Thus, the real issue in *Lumbermens* was *where* the cause of action arose, not *when* it arose.

Similarly, in *R.J. Reynolds Tobacco Co. v. Allen*, 228 So. 3d 684, 689 (Fla. 1st DCA 2017), the First District reasoned that, although a cause of action for wrongful death usually accrues upon the decedent's death, "*Engle*-progeny cases are different." The *Allen* court held that the pre-1999 version of section 768.73 applied to an *Engle* progeny personal injury suit that converted to a wrongful death action after the smoker died. *Id.* at 689–91.

In *Allen*, the smoker's COPD manifested before the November 21, 1996 *Engle* class cut-off date, the smoker's personal injury suit was commenced in 2007, and the smoker's suit was converted into a wrongful death action after she died in 2009. *Id.* at 689–90. In rejecting the defendants' argument that the post-1999 version of the statute applied, the First District reasoned that: "*[a]fter her causes of action accrued*, Mrs. Allen had a substantive right to seek punitive damages under the then-existing standard. Application of the post–1999 amendments to the punitive damages statute to Appellee's derivative claim would impair those substantive rights." *Id.* at 690 (emphasis added) (citation omitted).

In *R.J. Reynolds Tobacco Co. v. Evers*, 232 So. 3d 457 (Fla. 2d DCA 2017), the Second District extended *Allen* and held that the pre-1999 version of section 768.73 applied to an *Engle* progeny suit that was initially brought as a wrongful death action after the smoker died of lung cancer in 2007. The Second District reasoned that the plaintiff's "wrongful death action, like all *Engle*-progeny complaints, relates back to the 1994 *Engle* class-action complaint." *Id.* at 462. Thus, the Second District concluded that "[w]hile [the plaintiff] did not file the wrongful death action until 2007 when [the smoker] died, her right to do so was based on [the smoker's] status as an *Engle* class member, i.e., [the smoker's] manifestation of a tobacco-related disease or medical condition prior to November 21, 1996." *Id.* at 463.

Notably, the wrongful death causes of action in both *Allen* and *Evers* related back to a manifestation of a tobacco-related disease which arose prior to the 1999 amendment to the punitive damages statute. In other words, the claimants in those cases succumbed to the manifestation of the very disease that had already plagued them prior to the 1999 amendment. Those claimants could have brought their claims prior to the 1999 amendment as personal injury actions. Upon death from the same disease, their estates could have amended the pleadings, converting their claims into wrongful death actions. It is of no consequence that the lawsuits had not been filed prior to the 1999 amendment, as the relevant inquiry is when did the claims arise or accrue.

Recently, this court agreed "with the First and Second District Courts of Appeal in holding that the pre-1999 version of section 768.73, Florida Statutes, applies in an *Engle* progeny personal injury suit that is converted into a wrongful death action upon the smoker's death." *R.J. Reynolds Tobacco Co. v. Konzelman*, No. 4D16–4310, 43 Fla. L. Weekly D1037, 2018 WL 2126722 (Fla. 4th DCA May 9, 2018) (citing *Allen* and *Evers*).

The holding in *Konzelman* was, however, limited to the facts before us. Specifically, we agreed with the plaintiff's argument that the 1999 amendment to section 768.73 did not apply to an *Engle* class member's personal injury claim that accrued before the effective date of the statute, even if the claim was later converted to a wrongful death action after the effective date of the statute. While we agreed with *Allen* and *Evers* as applied to the facts before us, our decision also relied upon *Buonomo*, 138 So. 3d at 1052, a case which looked to the time of the manifestation of the illness causing the smoker's death in determining that the pre-1999 statute applied.

*Konzelman* was also consistent with the principle that an injured party's right to seek punitive damages survives the merger or amendment of a personal injury survivor claim into a new wrongful death claim upon the injured party's death. *See Martin v. United Sec. Servs., Inc.*, 314 So. 2d 765, 771–72 (Fla. 1975) (allowing for punitive damages upon merger of personal injury survival action into wrongful death action).

In effect, *Konzelman* agreed with *Allen* and *Evers* to the extent that they recognized an exception to the general rule that a wrongful death claim accrues or arises upon the injured party's death, preserving an *Engle* class member's vested rights where the class member eventually dies of a tobacco-related illness that manifested before the 1999 amendment to section 768.73. In other words, the accrual date of an *Engle* class member's personal injury survivor claim effectively carries over to a merged or amended wrongful death claim upon death for purposes of determining when a cause of action arises.

However, all *Engle* wrongful death actions do not necessarily arise before the 1999 amendment to section 768.73, on the theory that they all relate back to the 1994 *Engle* class action complaint. We cannot agree with the sweeping proposition that all applicable statutory law in an *Engle* progeny case is necessarily frozen in place as of the time of the original 1994 *Engle* class action complaint.

Turning to the facts of this case and the plain text of the current version of section 768.73, we find that the plaintiff's wrongful death cause of action

arose after October 1, 1999. This court has held that when a smoker suffers from more than one smoking-related disease, a cause of action for each distinct disease accrues separately. *See Philip Morris USA, Inc. v. Barbanell,* 100 So. 3d 152, 158–60 (Fla. 4th DCA 2012) (action against cigarette manufacturer relating to smoker's death from lung cancer accrued, and limitations period began to run, when smoker knew or should have known that smoker had tobacco-related lung cancer; not when she earlier knew of a separate and distinct tobacco-related disease).

Under the circumstances here, we can think of no compelling legal reason why the trial court should have applied the pre-1999 punitive damages statute to a separate and distinct claim that did not accrue earlier than 2003. Although *Barbanell* was determining when a tobacco-related claim accrued or arose for statute of limitations purposes, we see no distinction in applying the same reasoning to when a claim accrued or arose for purposes of the punitive damages statute. After all, the Legislature intentionally avoided any impairment of vested rights by clarifying that its 1999 amendment to the punitive damages statute would apply only to those claims "arising after the effective date of [the] act," which was October 1, 1999. § 768.73(5), Fla. Stat. (1999); Ch. 99-225, § 23, Laws of Fla. If a claim cannot be said to have arisen or accrued for statute of limitations purposes, it is axiomatic that no vested rights have arisen to prevent the Legislature from limiting punitive damages as to that unripe claim.

Moreover, manifestation of a tobacco-related disease for purposes of establishing *Engle* class membership is a completely separate issue from the date a cause of action accrues or arises. *See R.J. Reynolds Tobacco Co. v. Ciccone,* 190 So. 3d 1028, 1039 (Fla. 2016) ("Simply put, the policy undergirding the 'manifestation' of an injury for the accrual of a cause of action is not the same as the policy rationale for the 'manifestation' requirement to establish *Engle* class membership. Accrual is simply not the relevant inquiry for determining *Engle* class membership.").

Here, the relevant facts are simple. Mrs. Martin qualified for *Engle* class membership based on her smoking-related heart disease that manifested in 1995, but she died from lung cancer that manifested in 2003. Accordingly, we find that the plaintiff's wrongful death cause of action arose no earlier than 2003, which was when Mrs. Martin developed lung cancer. We emphasize that, as of October 1, 1999, Mrs. Martin had no vested right to bring a claim for punitive damages under the pre-1999 statute arising from the harm caused by her lung cancer that manifested in 2003. Thus, because the smoking-related illness causing Mrs. Martin's

death did not develop until after the 1999 amendment to section 768.73, we find that the post-1999 version of section 768.73 applies to this case.

The plaintiff suggests that even if the post-1999 version of the statute applies to this case, it is unconstitutional. However, the plaintiff's constitutional challenge to the current version of section 768.73 is not properly before us because the plaintiff did not notice the Attorney General or the State Attorney as required by Florida Rule of Civil Procedure 1.071 when challenging the constitutionality of a state statute.

Therefore, applying the current version of section 768.73 to this case, we find that section 768.73(2)(a) bars a punitive damages award to the plaintiff because the defendants established before trial that punitive damages had previously been awarded against them in other actions "alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages."[3]

### *Cross-Appeal*

On cross-appeal, the plaintiff argues that the trial court erred in reducing the compensatory damages award based on comparative fault where the jury found for the plaintiff on the intentional tort claims. The trial court, of course, was simply following the law as we understood it to be correct in this district prior to *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294 (Fla. 2017). *See R.J. Reynolds Tobacco Co. v. Schoeff,* 178 So. 3d at 495–96 (interpreting section 768.81 to require apportionment of comparative fault in a tobacco case because at its core it is a product liability action, and concluding "that section 768.81 cannot be avoided simply because the action includes an intentional tort"). The Florida Supreme Court disagreed. Therefore, we are bound by the Florida Supreme Court's precedent in *Schoeff* to reverse and remand.

The dissent urges us to adopt the remedy employed by the Fifth District in *Foreline Security Corp. v. Scott,* 871 So. 2d 906, 911 (Fla. 5th DCA 2004),

---

[3] Furthermore, the exception in (2)(b) does not apply because the trial court did not make specific findings of fact that the amount of prior punitive damages awarded was insufficient to punish the defendants. And even if the exception in (2)(b) did apply, the plaintiff still could not recover punitive damages because "[a]ny subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court." § 768.73(2)(b), Fla. Stat. (1999). Undoubtedly, the prior punitive damages awards against the defendants would easily exhaust the plaintiff's $650,000 punitive damages award.

where the Fifth District held that a trial court erred when it ignored the jury's allocation of fault and determined post-verdict that the defendant was solely responsible for the full amount of the plaintiff's damages. The Fifth District concluded that the trial court erred by not applying the comparative negligence statute when it misled the jury into believing that it was allocating fault between the defendant and a nonparty, reasoning that "[t]he jury may have reached a different verdict on damages had it known that [the defendant] would bear the entire amount." *Id.* Based on the comparative fault issue, as well as a separate error in failing to instruct the jury on a liability defense, the Fifth District remanded the case for a new trial. *Id.*

The reasoning of *Foreline* thus suggests that, absent any other errors at trial, the proper remedy upon setting aside a jury's comparative fault allocation would be a new trial on damages. But we cannot find, nor does the Fifth District cite to, any statutory or other applicable legal basis for the remedy of requiring a new trial on damages when reversing or entering a directed verdict on a comparative fault defense after trial.

Indeed, it is well established that a reversal based on a comparative fault error does not affect or require a new trial on a jury's determination of compensatory damages. *E.g., Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262 (Fla. 1996). Instead, such an error simply requires a remand for apportionment of fault. *See id.* at 1263–64 (limiting remand to liability and apportionment of fault, and holding that "a reversal precipitated by *Fabre*[4] errors does not affect the determination of damages. As a consequence, the reversal in this case should not have extended to a new trial on damages."); *see also Regions Bank v. Capital Square, Inc.,* 83 So. 3d 900, 902–03 (Fla. 3d DCA 2012) (concluding that "a reversal precipitated by *Fabre* errors does not affect the determination of damages and should not require a new trial on damages," and remanding for "a new trial solely on the issue of apportionment between the parties"); *Schindler Elevator Corp. v. Viera*, 693 So. 2d 1106, 1108 (Fla. 3d DCA 1997) (holding that a comparative negligence error in erroneously omitting a nonparty from the verdict form required "a new trial limited to the apportionment issue, not a new trial on all liability issues"); *Am. Aerial Lift, Inc. v. Perez*, 629 So. 2d 169, 172 (Fla. 3d DCA 1993) (where reversal was required "on grounds unrelated to the damages issue," including a comparative negligence error in omitting *Fabre* defendants from the verdict form, the

---

[4] *Fabre v. Marin*, 623 So. 2d 1182, 1184 (Fla. 1993) (if defendant proves the fault of a nonparty on a comparative negligence affirmative defense, the jury may be asked to apportion the percentage of fault to the nonparty on the jury verdict form).

9

new trial would be "confined to issues of the liability of the defendant and of the other entities allegedly responsible for the condition of the defective equipment"); *Schindler Corp. v. Ross*, 625 So. 2d 94, 95–97 (Fla. 3d DCA 1993) (holding that a comparative negligence error required a retrial to determine the percentage of fault, but since neither that error nor a separate jury instruction error on a liability issue affected the jury's determination of damages, the retrial would be "confined to the issues of negligence, comparative negligence and the apportionment of fault, if any, as to the plaintiffs, the defendant, and Dade County").

Although the dissent asserts that the remand in these cases would have no impact on the amount of damages ultimately awarded, any remand to apportion liability between the parties and any *Fabre* defendants would have a net impact on the ultimate amount awarded without changing the gross amount of damages awarded by a prior jury. In those cases, the gross amount of damages awarded by a prior jury did not change, despite comparative fault errors impacting the net amount of damages.

Here, the Florida Supreme Court's elimination of the comparative negligence defense under the circumstances below leaves nothing for retrial or apportionment. The jury was instructed to award the compensatory damages they found to be attributable to the defendants— nothing less—nothing more. The fact that they were also instructed to determine the percentage of comparative negligence attributable to the plaintiff on a defense that the Florida Supreme Court has eliminated as applied here is of no consequence to the gross amount of compensatory damages awarded by the jury.

Moreover, it is a well-established presumption that a jury would have properly followed a trial court's instructions. *See, e.g., Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000) ("Absent a finding to the contrary, juries are presumed to follow the instructions given them."); *Sutton v. State*, 718 So. 2d 215, 216 n.1 (Fla. 1st DCA 1998) ("The law presumes that the jury followed the trial judge's instructions in the absence of evidence to the contrary."); *see also Johnson v. State*, 164 So. 3d 794, 797 (Fla. 1st DCA 2015) (verdict was not defective on the basis that the jury found defendant guilty of both the main offense and the lesser-included offense; the jury's separate finding of guilt on the lesser-included offense was deemed surplusage, and did not require mistrial, as the jury is presumed to follow court's instructions separately as to each charge).

The jury was separately instructed to award the full amount of compensatory damages they found to be proximately caused by the

defendants. They were also separately instructed to determine what percentage of comparative negligence, if any, they attributed to the plaintiff. They were instructed not to reduce the total amount of compensatory damages by the amount of comparative negligence, leaving it to the court to reduce any amount of comparative fault. In the absence of any evidence of wrongdoing by the jury, we must accept the well-established presumption that the jury properly followed the trial court's instructions.

Were we to ignore this well-established presumption in response to the defendants' perceived claim of unfairness from the post-verdict elimination of a comparative negligence defense they believed they could assert before the Florida Supreme Court's ruling in *Schoeff*, we would be imposing "will" instead of "judgment."[5] This we cannot do.

Accordingly, we are left with no alternative but to reverse and remand "with instructions for the trial court to award compensatory damages in the full amount of the jury's verdict." *See Philip Morris USA Inc. v. Gore*, 238 So. 3d 828, 831 (Fla. 4th DCA 2018) (reversing to comply with *Schoeff's* elimination of the comparative negligence defense under similar circumstances).

### *Conclusion*

On the main appeal, we reverse and remand with instructions for the trial court to vacate the punitive damages awards, but affirm on all other issues. On the cross-appeal, we reverse and remand with instructions for the trial court to reinstate the entire amount of the jury's verdict on compensatory damages.

*Affirmed in part, Reversed in part, and Remanded.*

LEVINE, J., concurs.
FORST, J., concurs in part and dissents in part with opinion.

FORST, J., concurring in part and dissenting in part.

I concur in the majority opinion in regard to the main appeal. I respectfully dissent concerning the disposition of the cross-appeal. Although I join the panel in reversal of the compensatory damage award, per *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294 (Fla. 2017), I

---

[5] THE FEDERALIST NO. 78 (Alexander Hamilton) ("The judiciary . . . may truly be said to have neither force nor will but merely judgment.") (capitalizations altered).

would hold that the appropriate remedy is to remand for a new trial limited to a determination of the amount of compensatory damages to be awarded to the plaintiff.

The issue of compensatory damages went to the jury in the instant case during the brief period in which *Schoeff v. R.J. Reynolds Tobacco Co.*, 178 So. 3d 487 (Fla. 4th DCA 2015) was the law of this District. In that opinion, we held that the compensatory damages awarded to an *Engle*-progeny plaintiff could be reduced by the amount of comparative fault attributed to the plaintiff, concluding that an *Engle*-progeny suit "is a products liability suit based on conduct grounded in negligence." *Id.* at 496. Accordingly, the trial court in the instant case instructed the jury that its compensatory damages award would be reduced by the "percentage of responsibility" which the jury determined "was caused by Carole Martin." This was the proper course of action to take during the time period between our opinion in *Schoeff* and the Florida Supreme Court's opinion that determined our analysis was erroneous and that compensatory damages could not be reduced in this manner in *Engle*-progeny cases.

After receiving the above-noted jury instructions regarding compensatory damages, the jury determined those damages to be approximately $5.4 million. It also found Mrs. Martin to have been 32% at fault. The defendant argues that the award of $5.4 million was "tainted" by the jury instruction, "because there is a substantial likelihood that the jury would have reached a different verdict had it been properly instructed about the role of its comparative fault allocation."

The defendants rely upon *Foreline Security Corp. v. Scott*, 871 So. 2d 906 (Fla. 5th DCA 2004) for their argument that a new trial on damages is appropriate. In that case, the jury found Foreline to be 50% liable after having been informed by the trial court that "'[t]he court in entering judgment will take into account your allocation of fault.'" *Id.* at 911 (alteration in original). The trial court subsequently "ignored the allocation of fault determined by the jury" and found Foreline to be 100% percent liable for the damages. *Id.* Because the jury was "misled" into believing that its allocation of fault would be taken into account by the trial court in awarding damages, the Fifth District remanded this issue, concluding "[t]he jury may have reached a different verdict on damages had it known that Foreline would bear the entire amount." *Id.*

Although I would not go so far as the defendants' brief and argue there is a "substantial likelihood" that the jury would have brought back a lower damages award if it knew that its award would not be reduced, I similarly

cannot conclude that there is "no reasonable possibility" that the verdict would not have been affected. *See Special v. West Boca Med. Ctr.*, 160 So. 3d 1251, 1253 (Fla. 2015). As in *Foreline*, the jury here "may have reached a different verdict on damages" had it known the defendants would bear the full amount of the damages and that the compensatory damage award would not be reduced to reflect the plaintiff's comparative fault.

The cases cited by the majority opinion are distinguishable with respect to the situation in the instant case. In all five cases, the trial court apportioned one hundred percent of the damages to either one defendant or, per a finding of comparative negligence, to one defendant and the plaintiff. *See Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1263-64 (Fla. 1996); *Regions Bank v. Capitol Square, Inc.*, 93 So. 3d 900, 902 (Fla. 3d DCA 2012); *Schindler Elevator Corp. v. Viera*, 693 So. 2d 1106, 1108 (Fla. 3d DCA 1997); *Am. Aerial Lift, Inc. v. Perez*, 629 So. 2d 169, 172 (Fla. 3d DCA 1993); *Schindler Corp. v. Ross*, 625 So. 2d 94, 95–97 (Fla. 3d DCA 1993). As in the instant case, a change in the law attributable to a Florida Supreme Court decision necessitated a reversal at the appellate level. The courts remanded these cases back to the jury to apportion fault. The court's remand in each of these cases would have no impact on the amount of the damages ultimately awarded to the plaintiff, as distinguished from the instant case.

The plaintiff here vehemently opposes remand of this issue for a new trial, arguing that the defendants invited the erroneous jury instruction. However, it is more appropriate to conclude that our *Schoeff* opinion invited, if not dictated, the (now-deemed) erroneous instruction, and the defendants (and the trial court) were merely following the law of this District with respect to the comparative fault jury instructions. Accordingly, I would remand the determination of the amount of compensatory damages for a limited hearing on that issue. Thus, I dissent in part from the majority opinion. I otherwise fully concur.

*　　　*　　　*

***Not final until disposition of timely filed motion for rehearing.***

13