# Third District Court of Appeal

## State of Florida

Opinion filed March 6, 2024.
Not final until disposition of timely filed motion for rehearing.
_____

No. 3D22-1202
Lower Tribunal No. 08-1464
_____

**Stefanny Sommers**,
Appellant,

vs.

**Philip Morris USA, Inc.**,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Eaton & Wolk, PL, and Douglas F. Eaton, for appellant.

Arnold & Porter Kaye Scholer LLP, and Geoffrey J. Michael (Washington, DC); Shook, Hardy & Bacon LLP, and Scott A. Chesin and Michael Rayfield (New York, NY), for appellee.

Before LOGUE, C.J., and FERNANDEZ and LINDSEY, JJ.

LOGUE, C.J.

In this <u>Engle</u> progeny case, Stefanny Sommers, as Personal

Representative of the Estate of Bert Sommers, appeals the trial court's final

judgment. We find the trial court properly concluded that the current version of section 768.73(2), Florida Statutes, applied to Sommers' wrongful death action and barred her punitive damages claim. We also find the trial court properly rejected Sommers' alternative argument that she was entitled to pursue punitive damages based on her survival claim because she abandoned the survivor claim prior to trial. Accordingly, we affirm.

## BACKGROUND

In 2008, Sommers brought an action for wrongful death against Philip Morris USA Inc. as a member of the class of individuals defined by the Florida Supreme Court in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006). Sommers alleged claims for strict liability, negligence, fraudulent concealment, and conspiracy to fraudulently conceal. In the alternative, Sommers brought a survival action alleging Philip Morris caused the decedent to develop coronary artery disease, which did not cause his death. The complaint specifically stated that the survival claim would apply only "in the event . . . Defendant[ ] contend[s] that Decedent[ ] died of some cause unrelated to smoking cigarettes containing nicotine[.]"

In 2014, Sommers moved to amend her complaint to allege a claim for punitive damages. The trial court entered an order granting the motion and allowing Sommers to seek punitive damages on both her intentional and non-

2

intentional tort claims. Shortly thereafter, on September 3, 2014, this Court issued its opinion in R.J. Reynolds Tobacco Co. v. Williams, 183 So. 3d 408 (Fla. 3d DCA 2014), which adopted the First District's decision in Soffer v. R.J. Reynolds Tobacco Co., 106 So. 3d 456 (Fla. 1st DCA 2012) and held that Engle plaintiffs were not entitled to seek punitive damages on their non-intentional tort claims. Philip Morris moved for reconsideration of the trial court's order granting leave to amend as to the non-intentional torts based on Williams. They also filed a motion for summary judgment on Sommers' claim for punitive damages arguing that Williams precluded punitive damages on the non-intentional tort claims and that Sommers had failed to produce sufficient evidence to support punitive damages on the intentional tort claims.

The trial court denied the motion for reconsideration without prejudice as to the non-intentional tort claims. The trial court indicated it intended to submit the issue to the jury through separate instructions and interrogatories to preserve the issue for appeal and preclude the need for a lengthy retrial.

During pretrial motions, the trial court subsequently heard Philip Morris' motion for summary judgment on the punitive damages claim. At the conclusion of the hearing, the trial court granted the motion in its entirety. With respect to the intentional tort claims, the trial court ruled that Sommers

3

submitted an insufficient factual record on reliance, stating there was no evidence in the record that the decedent relied on any statement made by Philip Morris in any way that caused harm to the decedent. As to the non-intentional tort claims, the trial court relied on Williams.

Sommers filed a lengthy motion for rehearing, which was heard the Friday before trial was expected to begin. At the conclusion of the hearing, the trial court indicated it would be deferring its ruling until Monday. Sommers then made an emergency motion to continue the trial and stay the case pending a forthcoming decision by the Florida Supreme Court in Soffer. Philip Morris agreed to the relief sought and the trial court granted the motion.

In March 2016, the Florida Supreme Court issued its opinion in Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219 (Fla. 2016), which reversed Williams and held that Engle plaintiffs may seek punitive damages on their non-intentional tort claims. Sommers then reset her motion for rehearing, which was subsequently denied by the trial court. Sommers filed a motion to reinstate the punitive damages claim for the non-intentional torts based on Soffer, and a motion for reconsideration with respect to the conspiracy to fraudulently conceal claim. The trial court denied the motion for reconsideration.

Trial commenced in March 2017. During jury selection, Sommers again raised the issue of reinstating her punitive damages claims as to the non-intentional torts. Philip Morris argued that if the trial court were inclined to allow the claim for punitive damages to be reinstated, then the trial would need to be continued to determine whether section 768.73(2), Florida Statutes, barred the punitive damages claim. The trial court ultimately declined to reinstate the punitive damages claims on the eve of trial. The case then proceeded to trial with only compensatory damages at issue.

After jury selection, Sommers expressly elected to abandon her alternative survival claim, explaining as follows:

> PLAINTIFF'S COUNSEL: So the record is clear, after consulting with Ms. Sommers, the PR for the Estate of B[e]rt Sommers, we have decided, as a result of the stipulation, if you will, that Philip Morris made at the May 9th calendar call regarding a concession or stipulation that Mr. Sommers – or one of his causes of death was lung cancer caused by cigarette smoking, substantially medically caused by cigarette smoking.
>
> Not being an issue any longer in the case, we are a making the election as between a wrongful death claim and survival to proceed with wrongful death.

On April 6, 2017, the jury returned a verdict finding that the decedent was a member of the Engle class because his addiction to cigarettes caused him to develop coronary artery disease before November 1996. The jury

5

found Philip Morris liable for fraud and conspiracy, determining that the decedent relied on false or misleading statements by Philip Morris that legally caused his lung cancer and death. The jury then awarded Sommers $1 million in compensatory damages.

Sommers filed a motion for new trial on entitlement to punitive damages. The trial court granted the motion in part, permitting Sommers to seek punitive damages based only on her non-intentional tort claims. Despite ordering a new trial on punitive damages, the trial court entered a final judgment in Sommers' favor for the compensatory damages award.

Philip Morris appealed the trial court's final judgment and order granting a new trial. Sommers cross-appealed the trial court's denial of her motion for new trial as it pertained to punitive damages on her intentional tort claims. Philip Morris ultimately did not oppose the cross-appeal. This Court subsequently affirmed as to the main appeal and partially reversed as to the cross-appeal, remanding for a trial on punitive damages on both Sommers' intentional and non-intentional tort claims. Philip Morris USA, Inc. v. Sommers, 289 So. 3d 17 (Fla. 3d DCA 2019).

On remand, Philip Morris filed a motion to apply the current version of section 768.73, Florida Statutes. It argued that Sommers' punitive damages claims were barred because the decedent died after the effective date of the

6

statute (October 1, 1999) and Philip Morris had already paid hundreds of millions in punitive damages for the same course of conduct. While the trial court initially denied the motion based on a district split concerning the applicability of section 768.73(2) in Engle cases, the Florida Supreme Court ultimately decided in Sheffield v. R.J. Reynolds Tobacco Co., 329 So. 3d 114, 125 (Fla. 2021), that the "1999 amendments to section 768.73 app[ied] in Engle progeny wrongful death actions in which the decedent died after the effective date of the amendments."

Philip Morris then moved to vacate the trial court's prior order denying their motion to apply the current version of section 768.73 and for summary judgment on Sommers' punitive damages claims. Sommers filed a response in opposition. On June 21, 2022, the trial court issued its order granting Philip Morris' motion for final summary judgment. This appeal timely followed.

## DISCUSSION

This Court reviews the trial court's order on the motion for summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Issues involving the interpretation of a statute are also reviewed de novo. Velez v. Miami-Dade Cnty. Police Dept., 934 So. 2d 1162, 1164 (Fla. 2006). The trial court's finding of waiver, however, is

7

reviewed for abuse of discretion. <u>Schoeff v. R.J. Reynolds Tobacco Co.</u>, 232 So. 3d 294, 305 (Fla. 2017).

While Sommers does not dispute the trial court's conclusion that the current version of section 768.73(2) applied to her wrongful death action, she nevertheless contends the trial court erred in applying the statute. Sommers argues she was entitled to an evidentiary hearing to determine whether Philip Morris had been sufficiently punished pursuant to section 768.73(2)(b) and contends that the trial court erred by determining that such a hearing, or even a subsequent trial on punitive damages, would be futile. Sommers alternatively argues that even if section 768.73(2) barred her from recovering punitive damages on her wrongful death claim, she was still entitled to pursue punitive damages based on her survival claim relating to the decedent's coronary artery disease. As discussed in greater detail below, we do not find merit in either of these arguments.

I.    <u>The trial court properly concluded Sommers abandoned her survival claim and therefore could not recover punitive damages based on the injury underlying that claim.</u>

Beginning with the last issue first, the trial court was correct in concluding that Sommers abandoned her survival claim and therefore could not recover punitive damages based on the injury underlying that claim. Sommers contends this determination was erroneous because her election

8

to proceed with the wrongful death claim rather than the survival claim was precipitated by "Philip Morris [ ] erroneously strip[ing] punitive damages from the case[.]" According to Sommers, because she could no longer seek punitive damages at trial, she "judged the wrongful death claim to be more valuable than the survival claim" and chose to try only the wrongful death claim.

This explanation, however, is not supported by the record. As expressly stated in her complaint, Sommers' alternative survival claim was triggered only if Philip Morris disputed that the decedent died from smoking cigarettes: "Alternatively, in the event . . . Defendant[ ] contend[s] that Decedent[ ] died of some cause unrelated to smoking cigarettes containing nicotine, Plaintiff asserts a claim for survival damages . . . ." This was the extent of the "survival claim" Sommers pled. She never pled a separate count for a survival claim related to the coronary artery disease injury she now contends entitled her to punitive damages.

And, as Philip Morris expressly stipulated at trial, smoking cigarettes caused the decedent's lung cancer and death, therefore Sommers' survival claim as pled was rendered moot. Thus, as her statement at the beginning of trial made clear, it was "as a result of the stipulation [by Philip Morris]" that

9

Sommers elected "as between [the] wrongful death claim and survival to proceed with wrongful death."

II. The trial court properly concluded that section 768.73(2) barred Sommers' punitive damage claim.

Again, Sommers does not dispute on appeal that the current version of section 768.73(2) applied to her wrongful death action. Instead, she argues the trial court erred in denying her an evidentiary hearing to determine whether Philip Morris had been sufficiently punished pursuant to section 768.73(2)(b). She contends the trial court erred in deciding that such a hearing, or a trial on punitive damages, would be futile.

Section 768.73 provides:

> (2)(a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. For purposes of a civil action, the term "the same act or single course of conduct" includes acts resulting in the same manufacturing defects, acts resulting in the same defects in design, or failure to warn of the same hazards, with respect to similar units of a product.
>
> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, if the court determines by clear and convincing evidence that the

10

amount of prior punitive damages awarded was insufficient to punish that defendant's behavior, the court may permit a jury to consider an award of subsequent punitive damages. In permitting a jury to consider awarding subsequent punitive damages, the court shall make specific findings of fact in the record to support its conclusion. In addition, the court may consider whether the defendant's act or course of conduct has ceased. Any subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court.

§ 768.73, Fla. Stat. (emphasis added).

The initial question in applying section 768.73(2), as the trial court properly identified, is whether punitive damages have previously been awarded against Philip Morris in any state or federal court in any action alleging harm from the same act or single course of conduct for which Sommers sought compensatory damages.

The trial court properly concluded that Engle progeny actions, such as Sommers' action, allege that defendants, such as Philip Morris, engaged in the same course of conduct because each Engle progeny complaint recites the same findings from the Engle Phase I jury and asserts the same causes of action for strict liability, negligence, fraudulent concealment, and civil conspiracy. The trial court further found that Philip Morris established it had paid approximately $198 million in punitive damages in Engle progeny cases to date. Sommers does not dispute this number. Based on these findings, it

11

was proper for the trial court to conclude that Sommers' punitive damages claim was barred by section 768.73(2)(a) unless Sommers could establish that the exception under section 768.73(2)(b) applied.

This is where Sommers contends the trial court erred. She argues the statute required the trial court to grant her an evidentiary hearing to allow her to establish by clear and convincing evidence that Philip Morris had not been sufficiently punished by the prior punitive damages awarded. The trial court, however, concluded that any such hearing or subsequent trial on punitive damages would be futile because even if $198 million in prior punitive damages were insufficient to punish Philip Morris, for Sommers to recover any punitive damages she would have to obtain an award greater than $198 million. See § 768.73(2)(b), Fla. Stat. ("Any subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court.").

No such award, however, could be constitutionally valid because a punitive damages award must bear a reasonable relationship to the compensatory damages awarded, which in this case was $1 million. A ratio of 198 to 1 would be excessive as a matter of law and would violate Philip Morris' due process rights:

> [T]he typical measure used to determine whether a 'reasonable relationship' exists between the punitive

12

and compensatory damages is the ratio of the awards. Although there is no bright-line standard, the Florida Supreme Court observed in Engle that "[s]ingle-digit [ratios] are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." The reasoning in Engle accords with the United States Supreme Court's statement in State Farm that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."

R.J. Reynolds Tobacco Co. v. Townsend, 90 So. 3d 307, 314 (Fla. 1st DCA 2012) (quoting Engle, 945 So. 2d at 1264–65 and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003)) (internal citations omitted).

The trial court's reasoning in this regard is sound and finds support in Philip Morris USA Inc. v. Martin, 262 So. 3d 769 (Fla. 4th DCA 2018). In Martin, the Fourth District, applying the current version of section 768.73, held that section 768.73(2)(a) barred a punitive damages award to the plaintiff because the defendants established before trial that punitive damages in the amount of approximately $150 million had previously been awarded against them in tobacco lawsuits based on the same conduct. Id. at 772, 776. The Fourth District further held that "even if the exception in (2)(b) did apply, the plaintiff still could not recover punitive damages because . . . the prior punitive damages awards against the defendants would easily

exhaust the plaintiff's $650,000 punitive damages award [awarded at trial]." Id. at 776 n.3.

While in that instance there was an actual amount of punitive damages that had already been awarded to the plaintiff available for comparison, the rationale is the same here. The trial court essentially considered what might be the highest constitutionally valid award permissible and determined that it would be exhausted by the prior punitive damages paid by Philip Morris for the same conduct.

## **CONCLUSION**

The trial court properly concluded that the current version of section 768.73(2), Florida Statutes, applied to Sommers' wrongful death action and barred her punitive damages claim. The trial court also properly rejected Sommers' alternative argument that she was entitled to pursue punitive damages based on her survival claim because she abandoned the claim prior to trial and therefore could not recover punitive damages based on the injury underlying that claim.

Affirmed.