ON MOTION FOR REHEARING BILBREY, J. We grant rehearing on the court’s own motion, withdraw our previous opinion issued February 24, 2017,. and substitute this opinion in its place. In this Engle-progeny case,[1] Appellants raise four issues in their challenge to the final judgment which awarded Appellee $3,094,000 in compensatory damages, jointly and severally, and awarded Appellee $7,755,415 in punitive damages against each Appellant. Finding no error we affirm. Allegations of Juror Misconduct Appellants first contend that the trial court erred in not dismissing a juror during trial or for not.granting the Appellants' post-trial motion for new trial based on the juror’s alleged failure to disclose bias against tobacco companies during jury selection. The parties agree that the trial court’s denial of a motion to dismiss a juror and denial of new trial based on allegation of juror concealment of bias are reviewed for abuse of the trial court’s discretion. Villalobos v. State, 143 So.3d 1042, 1046 (Fla. 3d DCA 2013). “Indeed, Florida courts give great deference to such decisions because trial judges are in the unique position to evaluate the practices of the attorneys during voir dire and to determine what factors were material in jury selection.” Morgan v. Milton, 105 So.3d 545, 549 (Fla. 1st DCA 2012); When jury selection began, the trial court explained the process to the panel of' prospective jurors; including explaining a juror questionnaire prepared by the Appellants. The court asked the jurors “to take seriously the questionnaire and answer the questions as truthfully and fully as you can.” Prospective juror Michael Taylor , completed his questionnaire. Mr, Taylor checked the areas in which he had worked or received training or education, including “Tobacco/Cigarette Industry,” “Addiction or substance abuse,” and “Smoking cessation.” In response to the request' to “explain,” Mr. Taylor wrote “Tobacco former smoker, substance tobacco” and “ex-smoker 28 years/5 clean.” In response to a question regarding his “smoking status,” Mr. Taylor circled “Former Smoker.” He gave details of his former smoking behaviors, including his start at age 13, the 28 years he was a smoker, and that he tried to quit “many” times. He also described his family’s history of smoking, including the particular relatives who smoked, what brands they smoked, and the heavy amounts that they smoked. Mr. Taylor indicated in the questionnaire that he thought his minor son suffered from smoking-related asthrna. When asked in question 30 , his. opinion , of smokers, Mr. Taylor wrote; “Addicted but accountable for tjieir choices.” In answer to question 31 about his opinion of “a lawsuit against a tobacco company,” Mr. Taylor wrote that he “piust know the facts to.judge.” When asked in question 32 his “opinion, if any, of cigarette companies,” Mr. Taylor wrote, “they are a business.” Jury selection spanned three days. The parties point to only one excerpt in the transcripts of the jury selection showing Mr. Taylor being questioned individually. When asked by Appellee’s trial counsel about his smoking history, Mr. Taylor replied, “I smoked 28 years, addicted to nicotine, quit on Chantix 2008. Smoked a pack a day.” Mr. Taylor was never individually questioned by Appellants’ trial counsel. No preemptory or for cause challenges'were directed- at Mr. Taylor, and he was selected as a member of the jury. On the fourth day of trial Appellants’ trial counsel raised the allegations of juror misconduct by 'Mr. Taylor in a written motion seeking to have him removed from the jury. The motion alleged “personal-and deep-seated antagonism and bias against Defendants” based on social media postings Mr. Taylor had purportedly made on the internet in the past. The trial continued, and a few days later counsel for Ap-pellee filed a written response. The trial court heard argument on the motion outside the presence of the jury, and after taking the matter under advisement, denied .the motion to dismiss Mr. Taylor from the jury. After the jury returned, verdicts for compensatory and then punitive damages for the Appellee, the trial court entered a detailed order setting forth the basis for denying the motion to remove Mr. Taylor. After the jury verdicts, the Appellants moved for a new trial based on the same allegations raised in them motion to dismiss Mr. Taylor from the jury. After receiving a response from Appellee and holding a hearing on the motion for new trial, the trial court denied that motion. At no time did Appellants seek to further voir dire or interview Mr! Taylor regarding the allegations of bias. The trial court thoroughly analyzed this issue in its orders denying the dismissal of Mr, Taylor and denying a new trial. The three-part standard the trial court correctly used was given in De La Rosa v. Zequeira, 659 So.2d 239 (Fla. 1995), In De La Rosa, the Florida Supreme Court stated the test for whether a new trial is warranted based on juror concealment, “First, the complaining party must establish that the information is- relevant and material -to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party’s lack of diligence.” Id. at 241. The first prong of the De La Rosa standard was undisputed below, and the trial court found that the postings were relevant and material to Mr. Taylor’s jury service.[2] As to the second prong of the De La Rosa standard, the trial court found that Mr. Taylor did not conceal any bias against the Appellants. In the order denying Appellants’ motion to dismiss Mr. Taylor, the trial court stated, First, Juror Taylor’s response that cigarette smokers are “addicted but accountable for their choices” is not inconsistent with his social media posts. In both posts -Juror Taylor discussed his overcoming of smoking addiction. Similarly, his responses to the other two questionnaire questions are not contradictory of his social media posts. The Defendants appear to argue that Juror Taylor was requested to elaborate more in his response to the questionnaire. However, questions 30-32 of the juror questionnaire are subjective questions that are broad enough to summon a wide array of responses. The questions certainly do not clearly or squarely ask for the detailed level of information present in Juror Taylor’s social media posts. The questions do not specifically require the jurors to disclose whether they harbor .any negative feelings towards tobacco companies. The questionnaire did not ask unequivocal questions regarding bias, and Mr. Taylor did not provide unequivocal answers, which distinguishes the facts here from Roberts ex rel. Estate of Roberts v. Tejada, 814 So.2d 334 (Fla. 2002), cited by Appellants. In Roberts, the Florida Supreme Court required a new trial where a juror failed to disclose that she had been involved in prior litigation when asked if she had ever been a party to a lawsuit. See also De La Rosa, 659 So.2d at 241. The questions and answers at issue here were not the clear, black or white, yes or no, type of questions at issue in Roberts. Mr. Taylor cannot be blamed for “not being more forthcoming given the very basic questions asked.” Gamsen v. State Farm Fire & Cas. Co., 68 So.3d 290, 294 (Fla. 4th DCA 2011); see also Hood v. Valle, 979 So.2d 961 (Fla. 3d DCA 2008).[3] The trial court did not abuse its discretion in finding that the second prong of the De La Rosa standard was not met. The trial court also found that there was insufficient due diligence exercised by Appellants to meet the third prong of the De La Rosa standard. As the Court explained in Roberts, “resolution of this ‘diligence’ issue requires a factual determination regarding whether the explanations provided by the judge and' counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information.” 814 So.2d at 343. In making the factual determination, in the order denying the dismissal of Mr. Taylor from the jury, the trial court found, [Questions 30-32 of the juror questionnaire were broad enough to elicit a wide array of responses. Juror Taylor’s responses to these three questions raised numerous issues that would logically call for follow-up questions. Moreover, Juror Taylor indicated on the questionnaire that he was a former heavy smoker of twenty-eight years, and had been “clean” for the past five years. He also stated that his father and both grandfathers were lifelong heavy smokers, leading to health issues. Juror Taylor indicated on the questionnaire that he attributed his son’s asthma to smoking-related causes. The trial court also mentioned Mr. Taylor’s verbal response detailing his smoking history. The trial court found that due diligence required follow-up questions to Mr. Taylor, a long-time smoker now five years “clean,” to examine whether he “harbored no ill-feelings toward tobacco companies.” Due diligence is lacking when “at best, an, ambiguity may exist which was not explored.” Lugo v. State, 2 So.3d 1, 15 (Fla. 2008). The trial court noted that it did not impose time limits on the voir dire. The trial court concluded that Appellants’ likely strategic decision not to question Mr. Taylor did not satisfy due diligence. Given Mr. Taylor’s disclosed personal and family history with cigarette smoking, along with .his answers to questions 30 through 32 in the questionnaire, we find no abuse of discretion in the trial court determining that Mr. Taylor should have been asked clear and direct questions during jury selection regarding any bias against tobacco companies. As two prongs of the De La Rosa standard are lacking, there was no error in the trial court’s refusal to dismiss Mr. Taylor or grant a new' trial based on his serving on the jury. Comparative Fault Appellants next argue that the trial court erred by not reducing the compensatory damages following the jury’s finding that the decedent' was seventy percent at fault. Although there is a split of authority among the Florida district courts, this court held in R.J. Reynolds Tobacco Co. v. Sury, 118 So.3d 849 (Fla. 1st DCA 2013), that apportionment of fault is not required by section 768.81, Florida Statutes, where a jury finds—as it found at trial- here— that a defendant committed intentional torts of fraudulent concealment and conspiracy to fraudulently conceal. In R.J. Reynolds Tobacco Co. v. Schoeff, 178 So.3d 487 (Fla. 4th DCA 2015), rev. granted, Schoeff v. R.J. Reynolds Tobacco Co., 2016 WL 3127698 (Fla. May 26, 2016), the Fourth District held contrary to Sury that fault should be apportioned in what that court considered to be a products liability action. We are obligated to follow Sury and in doing so hold that the trial court did not err when it refused to apportion fault.[4] Punitive Damages Appellants’.third issue is that the trial court applied the incorrect version of the punitive damages statutes resulting in an incorrect jury instruction on the standard-for awarding punitive damages and an award of punitive damages in excess of that permitted by law. Chapter 99-225, section 22, Laws of Florida, amended section 768.72(2)(b), Florida Statutes, to require a “conscious disregard” for the safety of others rather than the previous standard of “reckless disregard,” to allow for an award of punitive.damages. Chapter 99-225, section 23, amended section 768.73, Florida Statutes, to impose a stricter cap on punitive damages and to require findings by the jury to overcome that cap. Appellants contend the post-1999 version of the statute applies here and that the trial court committed error by applying the -earlier version of the statute. Typically, the applicable version of a statute is the one “in effect when the cause of action arose.” D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 n.9 (Fla. 2003) (citing Basel v. McFarland & Sons, Inc., 815 So.2d 687 (Fla. 5th DCA 2002)); §§ 768.72(4) & 768.73(5), Fla. Stat. In many wrongful death actions, the cause of action accrues on the date of a decedent’s death. Nationwide Mut. Fire Ins. Co. v. MacDonald, 645 So.2d 1057 (Fla. 4th DCA 1994). However, Engle-progeny cases are different. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla. 2006); see also R.J. Reynolds Tobacco Co. v. Ciccone, 190 So.3d 1028 (Fla. 2016) (applying manifestation rather than accrual of cause of action to establish membership in the Engle class). To be a member of the Engle class and to take advantage of the findings in Engle, a plaintiffs (or plaintiffs decedent’s) “symptoms of a tobacco-related disease or, medical condition” must have manifested by November 21, 1996. Ciccone, 190 So.3d at 1030; see also Engle, 945 So.2d at 1275, The testimony at trial was that Mrs. Allen’s chronic obstructive pulmonary disease (COPD) manifested before November 21, 1996, so she qualified for the res judicata benefits of the Engle class. See Ciccone; Soffer v. R.J. Reynolds Tobacco Co., 187 So.3d 1219, 1226-27 (Fla. 2016).[5] Here litigation commenced on September 18, 2007, when Mrs. Allen was still living. The initial complaint alleged that Mrs'. Allen was a member of the Engle class and entitled to benefit from the Engle findings. See Ciccone; Philip Morris USA, Inc. v. Douglas, 110 So.3d 419 (Fla. 2013). The initial complaint was filed within the one-year period daring which the Florida Supreme Court allowed individual claims following the decertification of the class in Engle, 945 So.2d at 1277. Mrs. Allen died on February 24, 2009, and Appellee continued the litigation which had been commenced before her death by filing a third amended complaint with the wrongful death claim. Section; 768.20, Florida Statutes, provides guidance and states in part, “When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.”[6] When Mrs. Allen died, her personal injury case did not “self-destruct like the secret message on a rerun of ‘Mission Impossible.’ ” Niemi v. Brown & Williamson Tobacco Corp., 862 So.2d 31, 33 (Fla. 2d DCA 2003), Instead it abated until a personal representative was.appointed and the existing suit was amended to add the wrongful death claim. Appellee was not required to file a new suit, but instead was allowed to proceed in the same suit initiated by Mrs. Allen. See Capone v. Philip Morris USA, Inc., 116 So.3d 363 (Fla. 2013). Just as the wrongful death action was allowed to relate back to date of the Engle class for statute of limitations purposes, the applicable statutory law also relates back to the Engle class. See In re: Engle Cases, 45 F.Supp.3d 1351 (M.D. Fla. 2014) (discussing relation back of wrongful death action following plaintiff/smoker’s death). This date had to be before November 21, 1996, so the post-1999 revisions to the punitive damages statutes do not apply. In Schoeff, the Fourth District had occasion to consider which version of the comparative fault statute applied to the wrongful death action. 178 So.3d at 492 n.3. Although that case began as a wrongful death action, the Schoeff court held that the version of the statute in effect at the time the decedent was diagnosed with lung cancer was the applicable version, since that was when the cause of action accrued. Id. That logic is even more persuasive here where the case began with Mrs. Allen as a plaintiff and was converted to a wrongful death action after she died. After her causes of action accrued, Mrs; Allen had a substantive right to seek punitive damages under the then-existing'standard. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla. 1994). Application of the post-1999 amendments to the punitive damages statute to Appellee’s derivative claim would impair those substantive rights. Id.; see also Celotex Corp. v. Meehan, 523 So.2d 141, 147 (Fla. 1988) (“wrongful death action is derivative of the injured person’s right, while living, to recover personal injury”) (citing Variety Children’s Hospital v. Perkins, 445 So.2d 1010 (Fla. 1983)).[7] Due Process Appellants’ final issue is raised only for preservation purposes, that the use of the Engle findings in the trial court violated due process. This argument has been definitively rejected by the Florida Supreme Court in Douglas, 110 So.3d at 430-31. Conclusion Having determined that no error was committed by the trial court, the judgment is affirmed. AFFIRMED. WINOKUR, J., CONCURS IN PART AND CONCURS IN RESULT ONLY WITH OPINION; OSTERHAUS, J., DISSENTS WITH OPINION. . Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla. 2006). , How the trial court knew the postings were Mr. Taylor’s, as opposed to someone else’s, without interviewing him is therefore not an issue for our consideration. Additionally, the remoteness in time of the postings, one over a year and the other over five years before the trial, and whether they remained material is not for our consideration. Cf. Leavitt v. Krogen, 752 So.2d 730 (Fla. 3d DCA 2000) (holding non-disclosure of an,over ten year old claim not .material). Finally, the post-trial postings mentioned in the dissent do not alter the test. Even if the post-trial postings were relevant and material, the other two prongs of the De La Rosa test must be met. . If Mr. Taylor had intended to be a stealth juror leading a runaway jury, he did a poor job of concealing it by providing answers in the questionnaire that he was a 28-year former smoker now "clean” for five years, mentioning his many attempts to quit smoking, and acknowledging his family members who smoked or who he believed were adversely affected by smoking. Cf. John Grisham, The Runaway Jury (1996) (a work of fiction where a prospective juror actively hid his past and hid strongly held beliefs in order to be selected as a juror and influence a substantial verdict against a tobacco company). . We also distinguish the situation here from R.J. Reynolds Tobacco Co. v. Hiott, 129 So.3d 473 (Fla. 1st DCA 2014), Unlike in Hiott, the jury here was not misled by the trial court or counsel regarding the reduction of compensatory damages. In fact the jurors here were repeatedly told that if they returned a verdict on the two fraud counts then damages could not be reduced by the percentage of fault attributed to the decedent. . Even using the typical test for accrual of a cause of action for a latent or "creeping disease," the cause of action here likely accrued by September or October 1996, when Mrs. Allen was diagnosed with early COPD and recommended to undertake smoking cessation treatment. See Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 936-37 (Fla. 2000); Ciccone, 190 So.3d at 1042-46 (Polston, J., dissenting). A follow-up exam on November 18, 1996, specifically fied her early COPD to continued tobacco use. . Other than the adoption of gender neutral language in 1997, this statute has not been altered since it was, adopted in Chapter 72-35, Laws of Florida; so the applicable year of section 768.20 is not at issue. . Additionally it would arguably be inequita- ' ble to subject the Appellee to the higher burden and potentially lower damages of the revised punitive damages statutes, when Mrs. Allen would have proceeded under the old statutes had she survived.- The Florida Supreme Court’s holding in Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975), one of the first cases interpreting the then new Wrongful Death Act, is instructive, there the Court allowed punitive damages in a wrongful death case holding, “We see no reason why United Security should escape possible liability for punitive damages merely because its employee killed rather than injured her.” Id. at 772.