EDWARDS, J.
*1232 The issue we address in this Engle -progeny[1] wrongful death case is whether to apply the punitive damages statute in place at the time of the decedent's death or to instead apply the punitive damages statute in place when the Engle class was recertified in 1996. Based on the statute's specific language and well-established Florida law, we hold that the applicable version of the punitive damages statute is the 1999 version of section 768.73, Florida Statutes, which was in effect when the instant wrongful death cause of action accrued on the date of decedent's death. We find the trial court erred by applying the pre-1999 version of that statute and reverse for further proceedings that may include a new trial on punitive damages. We are aware that three other district courts of appeal have reached a different conclusion on this issue; therefore, we certify express and direct conflict with those decisions.
FACTUAL BACKGROUND
Valton Sheffield was first diagnosed with primary lung cancer in 1994, nearly ten years after he quit smoking. He had a portion of the affected lung removed and then underwent radiation and chemical therapies, which purportedly cured him of that first cancer. In 2003, he was again diagnosed with lung cancer and underwent similar treatment. Three years later, in 2006, he was once again diagnosed with lung cancer and passed away in 2007.
His widow, Mary Sheffield, was named personal representative of his estate. On behalf of the Estate, she timely filed a wrongful death action seeking compensatory and punitive damages from several tobacco companies, including Appellant, R.J. Reynolds Tobacco Company, based on her claim that her husband's death was the result of smoking the defendants' addictive, harmful cigarettes. The Estate's complaint contained counts sounding in negligence, strict liability, fraud by concealment, and conspiracy to commit fraud, and further alleged that Mr. Sheffield was a member of the so-called Engle class.
Following trial, the jury returned one verdict finding liability against Reynolds and awarding $ 1.8 million in compensatory damages, and a second verdict awarding $ 5 million in punitive damages against Reynolds.
LEGAL ANALYSIS
Prior to, during, and following trial, Reynolds argued that the punitive damages issues should be governed by the current version of section 768.73, which became law on October 1, 1999, but the trial court agreed with the Estate and applied the pre-1999 version of that statute. The 1999 version modified the prior law in several ways, including potentially barring punitive damages awards against a defendant if punitive damages were previously awarded against that defendant "in any action alleging harm from the same act or single course of conduct." § 768.73(2)(a), Fla. Stat. (1999). Given the numerous prior punitive damages awards against it, Reynolds argues that applying the 1999 version of the statute would have given it the opportunity to avoid punitive damages completely.[2]
We apply the de novo standard to our review of the trial court's ruling on *1233 which version of the statute applied. See Townsend v. R.J. Reynolds Tobacco Co. , 192 So.3d 1223, 1225 (Fla. 2016).
Express statutory language controls
Section 768.73(5), Florida Statutes (1999), states: "The provisions of this section shall be applied to all causes of action arising after the effective date of this act." "When the statutory language is 'clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' " McNeil v. State , 162 So.3d 274, 275 (Fla. 5th DCA 2015) (internal citations omitted) (quoting Holly v. Auld , 450 So.2d 217, 219 (Fla. 1984) ). "Likewise, '[a] court cannot construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications.' " Casais v. State , 204 So.3d 969, 970 (Fla. 5th DCA 2016) (quoting Jefferson v. State , 927 So.2d 1037, 1039 (Fla. 4th DCA 2006) ).
In another Engle -progeny case, the Florida Supreme Court likewise held that where a statute expressly states to which cases it will apply, prospectively only or also retrospectively, the clear language of the statute governs. Schoeff v. R.J. Reynolds Tobacco Co. , 232 So.3d 294, 301 (Fla. 2017). "When the statute is clear and unambiguous, we use the plain language of the statute and avoid rules of statutory construction to determine the Legislature's intent." Id. (internal quotation marks and citations omitted). There, the supreme court applied the 2011 version of the comparative fault statute to Schoeff's Engle claim because that version specifically provided that "[t]his act is remedial in nature and applies retroactively." Id. Thus, when it comes to deciding which version of a statute shall be applied, Engle -progeny cases are no different than any other cases.
Statute in effect when cause of action arose will govern
In the absence of express statutory language to the contrary, Florida law generally holds that the applicable version of a statute is the version in effect at the time a cause of action accrues. D'Angelo v. Fitzmaurice , 863 So.2d 311, 314 n.9 (Fla. 2003) (applying statutes regarding apportionment of fault and setoff for settlements that were in effect when cause of action arose); Estate of Despain v. Avante Grp., Inc. , 900 So.2d 637, 641 n.3 (Fla. 5th DCA 2005) (applying punitive damages statute in effect when cause of action arose, rather than when trial occurred); St. John v. Coisman , 799 So.2d 1110, 1113 (Fla. 5th DCA 2001) (applying punitive damages statute in effect when cause of action arose); Nationwide Mut. Fire Ins. Co. v. MacDonald , 645 So.2d 1057, 1058 (Fla. 4th DCA 1994) (applying wrongful death statute that was amended after decedent was injured but before her death, which amendment created parents' claim for the loss of adult children); Brodose v. Sch. Bd. of Pinellas Cty. , 622 So.2d 513, 513 (Fla. 2d DCA 1993) (applying offer of judgment statutes in effect when cause of action accrued).
Wrongful death action accrues on date of death
Here, both parties agree that the statutory language as amended in 1999 is unambiguous so that it can be applied without need for further interpretation. Thus, both sides agree that it is to be applied to causes of action arising after October 1, 1999. However, they disagree as to when the Estate's wrongful death cause of action accrued. "Florida law does not distinguish between when a cause of action accrues and when a cause of action arises."
*1234 Philip Morris USA Inc. v. Martin , 262 So.3d 769, 773, 2018 WL 6566755 (Fla. 4th DCA Dec. 12, 2018) (quoting Lumbermens Mut. Cas. Co. v. August , 509 So.2d 352, 353 (Fla. 4th DCA 1987), quashed on other grounds , 530 So.2d 293 (Fla. 1988) ). "[T]he terms 'accrue' and 'arise' are synonymous with respect to when a cause of action comes into existence ...." Id. ; see also Accrue , Black's Law Dictionary (10th ed. 2014) ("To come into existence as an enforceable claim or right; to arise.").
"The purpose of the Florida Wrongful Death Act is to provide a 'separate and independent' cause of action since the original cause of action for personal injury did 'not survive' the death of the injured party." Kelly v. Georgia-Pacific, LLC , 211 So.3d 340, 342 (Fla. 4th DCA 2017) (citations omitted). "Wrongful death actions are brought on behalf of the survivors, not to recover for injuries to the deceased, but to recover for statutorily identified losses the survivors have suffered directly as a result of the death." DeVaughn v. DeVaughn , 840 So.2d 1128, 1132 (Fla. 5th DCA 2003).
Florida law is clear: a cause of action for wrongful death accrues on the date of the decedent's death. See Fulton Cty. Adm'r v. Sullivan , 753 So.2d 549, 552 (Fla. 1999) ("In Florida, a cause of action for wrongful death accrues on the date of death."); Love v. Hannah , 72 So.2d 39, 41 (Fla. 1954) ("The plaintiffs' right of action under the wrongful death statute must be determined by the facts existing at the time of the death of decedent."); St. Francis Hosp. v. Thompson , 159 Fla. 453, 31 So.2d 710, 711 (1947) ("Plaintiff's cause of action did not accrue by reason of the wrongful act alone. It took a wrongful act and death to give plaintiff a cause. The statute of limitations commenced to run upon death."); Domino's Pizza, LLC, v. Wiederhold , 248 So.3d 212, 219 (Fla. 5th DCA 2018) ("This conclusion is consistent with cases recognizing that wrongful death actions accrue on the date of the decedent's death."); MacDonald , 645 So.2d at 1057 ("A cause of action for wrongful death accrues on the date of decedent's death."); Bruce v. Byer , 423 So.2d 413, 414-15 (Fla. 5th DCA 1982) ("The general rule is that a cause of action for wrongful death accrues upon the date of the decedent's death."); Moorey v. Eytchison & Hoppes, Inc. , 338 So.2d 558, 559 (Fla. 2d DCA 1976) ("The cause of action for wrongful death accrues upon the date of the decedent's death."); Fletcher v. Dozier , 314 So.2d 241, 241 (Fla. 1st DCA 1975) ("The [wrongful death] cause of action accrues and the statute [of limitations] commences to run on the date of such death."); Walker v. Beech Aircraft Corp. , 320 So.2d 418, 420 (Fla. 3d DCA 1975) ("Here, appellant's cause of action accrued at the date of her husband's death.").
Thus, when one considers the express language of the 1999 version of the punitive damages statute-that it applies to all causes of action arising after its effective date of October 1, 1999-combined with Florida's general rule that the statute in effect when a cause of action accrues is applicable, and well-established Florida law that a wrongful death cause of action accrues on the date of death, which here was 2007, one would expect no debate that the punitive damages issues in the underlying trial would have been governed by the 1999 version of the statute rather than the pre-1999 version. Yet the Estate argues, the trial court found, and three other district courts of appeal have concluded that the outcome is different for an Engle -progeny wrongful death case. We will next consider that line of reasoning and explain why we conclude it does not withstand scrutiny.
*1235 Engle : Manifestation vs. Accrual
In order to be considered a member of the Engle class, the plaintiff or the plaintiff's decedent must have manifested one of the smoking-related diseases or conditions prior to the cut-off date of November 21, 1996. R.J. Reynolds Tobacco Co. v. Ciccone , 190 So.3d 1028, 1030 (Fla. 2016). The Florida Supreme Court conferred two benefits upon the Engle class members: "(1) each class member's time to file an individual suit would be equitably tolled to allow filing within one year of the court's decision, and (2) in the individual action, the Engle jury's 'common core findings' in Phase I"-that the tobacco companies were negligent, marketed defective cigarettes, and conspired to conceal the risk of smoking-"would be given 'res judicata effect.' "[3] Id. at 1037 (internal citations omitted). In Engle , the supreme court found several reasons to vacate the original class-wide verdict awarding punitive damages, finding instead that separate punitive damages determinations would be made in each individual's case. Thus, Engle punitive damages are not subject to issue preclusion via res judicata treatment. Engle v. Liggett Group, Inc. , 945 So.2d 1246, 1263-65, 1277 (Fla. 2006). Here, the parties stipulated that Mr. Sheffield's 1994 lung cancer was a contributing cause of his death in 2007, and on appeal neither party contests Engle class membership.
The Estate asserts that "manifestation" sufficient to be an Engle class member is the equivalent of the "accrual" of the Estate's cause of action in 1994, which was before the effective date of the 1999 version of the punitive damages statute. The Estate conflates "accrual" with "manifestation" as though the terms were interchangeable. However, the Florida Supreme Court in Ciccone made it clear that "manifestation" and "accrual" are distinct concepts: "[S]tatute of limitations principles are inapplicable to the 'manifestation' issue of Engle class membership." Ciccone , 190 So.3d at 1037. " '[M]anifestation' for purposes of establishing membership in the Engle class means the point at which the plaintiff began suffering from or experiencing symptoms of a tobacco-related disease or medical condition." Id. at 1030. The supreme court noted that under the definition of manifestation it adopted, "the plaintiff does not need to have been formally diagnosed or know that the symptoms were tobacco-related prior to the 'cut-off date' for class membership." Id. at 1031. However, the supreme court has held that a cause of action for latent or "creeping diseases" does not accrue and the statute of limitations does not begin to run until the plaintiff has knowledge of the causal connection between the infirmity and the product in question. Id. at 1038. "[I]t is clear that a plaintiff should not, and cannot, be required to file a cause of action before even realizing that the cause of action exists." Id. The supreme court noted that "the policy concerns driving cases involving the accrual of a cause of action for statute of limitations purposes have no bearing on the policy for requiring 'manifestation' to prove membership in the Engle class." Id. at 1037. "Moreover, manifestation of a tobacco-related disease for purposes of establishing Engle class membership is a completely separate issue from the date a cause of action accrues or *1236 arises." Martin , 266 So.3d at 776 (citing Ciccone , 190 So.3d at 1039 ).
When Reynolds previously attempted to equate Engle class membership with the accrual of a cause of action, the Florida Supreme Court made it crystal clear that this line of reasoning was incorrect:
Simply put, the policy undergirding the "manifestation" of an injury for the accrual of a cause of action is not the same as the policy rationale for the "manifestation" requirement to establish Engle class membership. Accrual is simply not the relevant inquiry for determining Engle class membership.... Because R.J. Reynold's argument regarding statute of limitations principles "fails to take into account the differences in policy between the accrual of a cause of action for the purposes of the statute of limitations and pinpointing a date for class membership by looking back in time from the 2006 Engle decision," this argument is unavailing ....
Ciccone , 190 So.3d at 1039 (internal citations omitted).
In R.J. Reynolds Tobacco Co. v. Allen , 228 So.3d 684 (Fla. 1st DCA 2017), the First District dealt with an Engle -progeny case that had been timely commenced as a personal injury case, which was then converted into a wrongful death action when Allen passed away. In Allen , the First District conflated Engle class membership with accrual of the relevant cause of action. After acknowledging that "[i]n many wrongful death actions, the cause of action accrues on the date of a decedent's death," that court then concluded that Engle -progeny cases were different because class membership depended upon manifestation rather than accrual. Id. at 689.
Given the supreme court's lengthy discussion in Ciccone about how the accrual of a cause of action is irrelevant to Engle class membership, it is unclear why the First District concluded that class membership was not only relevant to, but in fact determined, when a cause of action accrued. There are many people who potentially were Engle class plaintiffs because they were Florida residents who manifested signs of a smoking-related illness or disease before the November 21, 1996 recertification date, but whose causes of action had not accrued by the filing deadline in 2007 because they were not yet on reasonable notice of a causal connection between their use of tobacco and the illness or disease. Furthermore, because a wrongful death action is "separate and independent," it cannot arise until death has occurred. See Kelly , 211 So.3d at 342. "Plaintiff's cause of action did not accrue by reason of the wrongful act alone. It took a wrongful act and death to give plaintiff a cause." Thompson , 31 So.2d at 711.
The First District also improperly relied upon the concept that both the wrongful death action and punitive damages claim related back to the "date of the Engle class for statute of limitations purposes" based upon a misapplication of In re Engle Cases , 45 F.Supp.3d 1351 (M.D. Fla. 2014). Allen , 228 So.3d at 690. Both Allen and In re Engle Cases dealt with cases in which "the original complaints (filed by the then-alive plaintiffs) were timely filed," and then became potential wrongful death cases when each plaintiff passed away. In re Engle Cases , 45 F.Supp.3d at 1356 ; see Allen , 228 So.3d at 690. The Middle District concluded that plaintiffs would be permitted to file amended complaints substituting wrongful death claims for personal injury claims and the wrongful death claims would be deemed timely filed because they would relate back to the dates on which the corresponding original personal injury complaints were filed. In re Engle Cases , 45 F.Supp.3d at 1360-61. In *1237 Allen , the First District mistakenly suggested that In re Engle Cases found that wrongful death actions would relate back to the date of the Engle class for statute of limitations purposes. Allen , 228 So.3d at 690. However, as noted, the Middle District held that the amended complaints asserting wrongful death would relate back to the date of each plaintiff's original personal injury complaint, not to the date of the class-action complaint filed in May 1994. Had the First District properly applied In re Engle Cases , it would have concluded that the amended complaint for wrongful death filed by Allen's estate related back to the date when Allen's personal injury complaint was filed, rather than to the date on which Allen manifested smoking-related disease symptoms. Here, Mr. Sheffield never filed a personal injury complaint, so the relation-back doctrine is inapplicable.
Although in Allen the First District cited Engle and Ciccone as support for its assertion that Engle cases are not subject to the usual rule-that wrongful death actions accrue on the date of death-neither of those cases so held. For the reasons discussed, we believe that the First District incorrectly concluded that the pre-1999 punitive damages statute would apply to a cause of action arising after 1999.[4]
In R.J. Reynolds Tobacco Co. v. Evers , 232 So.3d 457 (Fla. 2d DCA 2018), the Second District also conflated "manifestation" for purposes of class membership with the "accrual" of a cause of action. Id. at 461. Evers was commenced as a wrongful death action following Mr. Evers's death in 2007. In large part, Evers relies upon and quotes from the Allen case, discussed above. Thus, we need not repeat the bases for our disagreement.
Citing Allen and Evers , the Fourth District announced its agreement with the First and Second Districts "in holding that the pre-1999 version of section 768.73, Florida Statutes, applies in an Engle progeny personal injury suit that is converted into a wrongful death action upon the smoker's death." R.J. Reynolds Tobacco Co. v. Estate of Konzelman , 248 So.3d 134, 135 (Fla. 4th DCA 2018).[5] The Konzelman opinion contains no information about when Ms. Konzelman's personal injury cause of action arose, nor does it provide information about when she died. One would assume from the opinion that Ms. Konzelman, the decedent, manifested a smoking-related illness or disease by the November 21, 1996 cut-off date for Engle class membership. In a more recent Engle -progeny punitive damages case, the Fourth District noted that "manifestation of a tobacco-related disease for purposes of establishing Engle class membership is a completely separate issue from the date a cause of action accrues or arises." Martin , 266 So.3d at 776 (citing Ciccone , 190 So.3d at 1039 ).[6] As the Fourth District gave no *1238 basis in Konzelman for its conclusion other than its agreement with the First and Second Districts, there is nothing else that needs to be said other than we disagree for the reasons expressed above.
CONCLUSION
For the reasons discussed above, we hold that the Estate's wrongful death cause of action accrued on the date of Mr. Sheffield's death in 2007, making the 1999 version of section 768.73, Florida Statutes, applicable to the punitive damages issues in this case and to the possible retrial of those issues. We reverse that portion of the judgment awarding punitive damages and remand to the trial court for further proceedings consistent with this opinion, which may include a new trial regarding only punitive damages issues.[7] We affirm the remainder of the final judgment after carefully considering the additional issues raised by Reynolds.
We certify that our opinion in this case directly and expressly conflicts with the decisions of R.J. Reynolds v. Konzelman , 248 So.3d 134 (Fla. 4th DCA 2018) ; R.J. Reynolds Tobacco Co. v. Evers , 232 So.3d 457 (Fla. 2d DCA 2017) ; and R.J. Reynolds Tobacco Co. v. Allen , 228 So.3d 684 (Fla. 1st DCA 2017).
AFFIRMED IN PART, REVERSED IN PART, REMANDED FOR FURTHER PROCEEDINGS REGARDING PUNITIVE DAMAGES, AND CONFLICT CERTIFIED.
COHEN, J., concurs.
LAMBERT, J., concurs in part, and dissents in part, with opinion.
LAMBERT, J., concurring, in part, and dissenting, in part.
I concur with affirming the award of $ 1.8 million in compensatory damages. As to the reversal of the punitive damages award, the majority opinion holds that the post-1999 version of section 768.73, Florida Statutes, applies to the instant wrongful death action because this cause of action did not accrue until the death of the decedent, Valton Sheffield, in 2007. However, because I believe that the trial court properly applied the pre-1999 version of this punitive damages statute, I dissent from that portion of the opinion.
Mr. Sheffield's cause of action for personal injuries and illnesses related to his use of cigarettes manufactured and distributed by R.J. Reynolds accrued in 1994 when he was first diagnosed with lung cancer. Stated differently, Mr. Sheffield could have filed his own suit against R.J. Reynolds for his tobacco-related personal *1239 injuries and illnesses long before the 1999 amendment to the punitive damages statute. If he had and later died after 1999 due to his illness, his personal right to seek punitive damages under the pre-1999 statute would have survived the merger or amendment into the later wrongful death claim brought by his estate. See Martin v. United Sec. Servs., Inc., 314 So.2d 765, 771-72 (Fla. 1975) (allowing for punitive damages upon merger of personal injury survival action into wrongful death claim).
Mr. Sheffield deferred filing his own suit and instead participated as a class member in the lengthy Engle class action tobacco litigation. That case essentially did not conclude until the Florida Supreme Court issued its opinion in 2006 that, among other things, approved the decertification of the class but provided each class member a one-year window from the issuance of its mandate to bring an individual action.[8] Engle , 945 So.2d at 1277. In my view, the fact that Mr. Sheffield elected to forego filing his individual action against R.J. Reynolds prior to 1999 and instead remained a part of the Engle class action litigation against R.J. Reynolds and the other defendants should not be dispositive.
The Fourth District Court of Appeal recently observed in another Engle case that when a claimant could have brought his or her personal injury claim prior to 1999 and later succumbs to the very disease "[i]t is of no consequence that [suit] had not been filed prior to the 1999 amendment, as the relevant inquiry is when did the claims arise or accrue." Martin , 266 So.3d at 774. I agree with this analysis and with the decisions of our sister courts in Allen , Evers , and Konzelman , cited in the majority opinion, to the extent that they determined the pre-1999 punitive damages statute applies or essentially relates back to the Engle class-action complaint when the Engle class member dies after 1999 as a result of his or her tobacco-related personal injury or illness claim that arose prior to the 1999 statutory amendment. Here, the parties stipulated that Mr. Sheffield's tobacco-related lung cancer first diagnosed in 1994 was a contributing legal cause of his death in 2007.
I would affirm the $ 5 million punitive damages award.

Engle v. Liggett Grp., Inc. , 945 So.2d 1246 (Fla. 2006).

However, section 768.73(2)(b) permits the trial court to submit punitive damages to the jury "if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior."

Reynolds appeals the use of the Engle common core res judicata liability findings, asserting that it violates federal due process and that the Estate's strict-liability and negligence claims are pre-empted by federal law. Reynolds concedes that those issues were litigated before the Florida Supreme Court, which denied those arguments; Reynolds raises them here for the purpose of preserving them for later review.

The Allen opinion does not state when Ms. Allen's personal injury cause of action arose separate from the fact that her illness manifested itself prior to the November 21, 1996 cut-off date. Her personal injury suit was filed in 2007 and was converted into a wrongful death action in 2009.

As noted above, Evers was originally a wrongful death case; it was not commenced as a personal injury claim that was converted to a wrongful death case.

Martin concerned an Engle class member whose class-qualifying disease manifestation was a tobacco-related heart attack. 266 So.3d at 769-70. However, Mrs. Martin ultimately died in 2004 from tobacco-related lung cancer that manifested itself in 2003. Id. Under those circumstances, the Fourth District found that her cause of action accrued in 2003 when she first manifested lung cancer, making the punitive damages statute that became effective October 1, 1999, applicable. Id. at D2749. Thus, Martin also conflated "disease manifestation" with "accrual of a cause" of action because it did not use the date of death to determine when the cause of action accrued. However, the Fourth District in Martin did reject the concept that all Engle -progeny claims relate back to the 1994 Engle class action complaint. Id.

Because section 768.73(2)(b) permits the trial court to submit punitive damages to the jury "if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior," whether the punitive damages award will be stricken or whether a new trial limited to punitive damages must take place depends initially on the trial court's determination of that statutory issue. Because the trial court ruled that the pre-1999 punitive damages statute controlled, it made no findings on the sufficiency of prior awards. Even if the trial court found the prior punitive damage awards did not sufficiently punish Appellant's behavior, a new trial may not be justified, as a practical matter, because that same statutory subsection provides that any such award "must be reduced by the amount of any earlier punitive damages awards rendered in state or federal court." See Martin , 266 So.3d at 776 n.3.

As indicated in the majority opinion, it is undisputed that Mr. Sheffield is an Engle class member, which the Florida Supreme Court defined to include "[a]ll [Florida] citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Engle , 945 So.2d at 1256.